## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

   Plaintiff,

  v.         No. **CR 05-1150 MCA**

**JOHN NORBERT CONTRERAS**,

   Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the following motions: (1) the *Government's Motion to Compel Discovery* [Doc. 41] filed on March 27, 2006; (2) *Defendant's Motion in Limine: Fed. R. Evid. 609* [Doc. 43] filed on March 27, 2006; (3) *Defendant's Motion in Limine: Fed. R. Evid. 404(b)* [Doc. 44] filed on March 27, 2006; (4) *Defendant's Motion in Limine: Fed. R. Evid. 701* [Doc. 46] filed on March 28, 2006; (5) *Defendant's Motion in Limine: Fed. R. Evid. 609 (Delbert Tenorio)* [Doc. 47] filed on March 28, 2006; (6) *Defendant's Motion in Limine: Fed. R. Evid. 609 (Connie Tenorio)* [Doc. 48] filed on March 28, 2006, and *Defendant's Motion for the Court's Reconsideration of its Ruling Admitting Fed. R. Evid. 404(b) and 609 Evidence Against Him* [Doc. 68] filed on August 2, 2006. The Court held a hearing on the first five of these motions on July 6, 2006. Having reviewed the parties' written submissions and oral arguments, the relevant law, and being fully advised in the premises, the Court grants Defendant's motions in part and denies Defendant's motions in part for the reasons set forth below. In addition, the

Court defers ruling on the Government's discovery motion [Doc. 41] pending completion of an *in camera* review of the diary entries which are the subject of that motion.

## I.    BACKGROUND

Defendant John Norbert Contreras is charged in an *Indictment* [Doc. 2] with one count of bank robbery at a Bernalillo County, New Mexico branch of the Bank of America New Mexico, N.A. on or about April 25, 2005.  The case was initially assigned to the Honorable James A. Parker, Senior United States District Judge, on June 7, 2005.  [Doc. 8.]

On February 24, 2006, Defendant filed a *Notice of Alibi* [Doc. 36] listing the following witnesses in support of his claim that he was making picture frames at a friend's residence on the date of the alleged bank robbery:  Delbert Tenorio; Connie Tenorio; and Vera Mora.  The Government also filed a number of notices advising Defendant and the Court of the Government's intent to introduce expert testimony [Doc. 22] and to use prior convictions or crimes of Defendant and some of his alibi witnesses for the purposes set forth in Fed. R. Evid. 404(b) and/or 609.  [Doc. 32, 33, 39.]

The parties then filed the motions which are the subject of this *Memorandum Opinion and Order*.  [Doc. 41, 43, 44, 46, 47, 48.]  At a hearing on April 3, 2006, Judge Parker advised the parties that he must recuse from the case because he owns stock in the Bank of America.  [Doc. 56.]   The case subsequently was reassigned to me.  [Doc. 57.]

## II.    ANALYSIS

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine.  See generally United States v. Wagoner County Real Estate, 278 F.3d

1091, 1099 (10th Cir. 2002).  With respect to the admission of evidence under Fed. R. Evid. 404(b) and 609 concerning prior convictions or other acts of the accused in a criminal matter, however, certain limitations apply under both the express language of the rules and the Tenth Circuit's interpretation of those rules.  This *Memorandum Opinion and Order* addresses those limitations.

### A.    Admission of Defendant's Prior Crimes Under Fed. R. Evid. 404(b)

The Government has filed a notice of intent to introduce evidence of seven prior robberies committed by Defendant in 1997.  [Doc. 32.]  Defendant pleaded guilty to committing two of those robberies, namely the July 25, 1997, robbery of a branch of Norwest Bank located at 4624 Fourth Street, N.W., in Albuquerque, New Mexico, which resulted in his conviction in federal court dated April 27, 1999, and the November 22, 1997, robbery of a Sam's Club store located at 300 Eubank Boulevard, N.E., in Albuquerque, New Mexico, which resulted in his conviction in state court dated May 14, 1998.

The charges relating to the other five bank robberies in 1997 which the Government seeks to introduce in this case were dismissed as part of the plea agreement in the prior case. In response to Defendant's motion in limine on this issue, the Government has agreed not to seek admission of evidence concerning these five bank robberies in 1997, so long as evidence regarding the two robberies in that year to which Defendant pleaded guilty are admitted.  [Doc. 49.]

The Government seeks to introduce evidence of Defendant's participation in these two prior robberies under Fed. R. Evid. 404(b), which provides that evidence of other crimes,

wrongs, or acts may be admitted to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident.  See United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).  The Government contends that such evidence fits within the permissible purposes of this rule because the two prior robberies at issue here share many significant characteristics with the bank robbery charged in the current *Indictment*, and these similarities support an inference that the same individual (namely Defendant) committed all three robberies using a common scheme.  The Government also contends that many of these shared characteristics are not merely "garden variety" evidence that is present in every robbery, but instead indicate a significant degree of knowledge, preparation, and planning by the robber aimed at reducing the physical and forensic evidence available to law enforcement officers for identifying the perpetrator of the crime, and minimizing the potential sentencing enhancements associated with the crime.  According to the Government, such indicators show that the crime charged in the current *Indictment* was committed by someone with previous experience in committing similar robberies.

To determine whether evidence is admissible for one or more of the purposes listed in Fed. R. Evid. 404(b), the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  This test requires that:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must be relevant;  (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice;  and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

Applying this test, the Court determines that a limited amount of evidence regarding the two 1997 robberies for which Defendant pleaded guilty is relevant and offered for a proper purpose in the Government's case-in-chief.  In other bank robbery cases, the Tenth Circuit has consistently held that evidence of a *modus operandi* or a common plan or scheme evinced by prior robberies may be properly admitted under Rule 404(b).  See, e.g., United States v. Oberle, 136 F.3d 1414, 1419 (10th Cir. 1998); United States v. McGuire, 27 F.3d 457, 461 (10th Cir.1994);   United States v. Morgan, 936 F.2d 1561, 1572-73 (10th Cir.1991); United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir.1982); United States v. LaFlora, 146 Fed. Appx. 973, 975-76 (10th Cir. 2005) (unpublished disposition).  Other circuits have reached similar conclusions.  See, e.g., United States v. Perry, 438 F.3d 642, 648-49 (6th Cir. 2006); United States v. Oman, 427 F.3d 1070, 1075 (8th Cir. 2005).

The similarities identified by the Government at this juncture are (1) that the robber wore street clothes rather than using a mask or other distinctive attire that would stand out as a disguise or attract attention; (2) that in order to effect the robbery, the robber made oral threats in a low voice and/or used a demand note that said he had a gun, but he did not brandish a gun or make other physical threats during the robbery that would attract attention, leave a trail of evidence, or lead to sentencing enhancements; (3) that the robber did not leave the demand note with the victim such that it could be recovered and analyzed after the robbery; and (4) that in two of the robberies, the robber's demand note contained similar

language cautioning against using bait bills, dye packs, or tracking devices.  In addition, the crimes are all geographically similar because they occurred at commercial establishments in the vicinity of Albuquerque, New Mexico, and Defendant's incarceration between November 22, 1997, and May 4, 2004, accounts for the separation in time between the robberies.  See United States v. Cherry, 433 F.3d 698, 702 n.4 (10th Cir. 2005).

The Government cogently argues that these similarities evince a common plan, hatched from previous experience with robbing banks and stores, that is aimed reducing opportunities for detection by law enforcement personnel or bystanders and minimizing the sentencing consequences of the crime.  I find that evidence of such a common scheme, and the knowledge, preparation, and planning associated with such a scheme, is highly probative in this case where Defendant's identity as the perpetrator and his alibi defense appear to be the central issues in dispute.

In reaching this conclusion, the Court does not mean to suggest that the Government may use the similarities among the three crimes at issue here as a springboard to launch into other evidence or argument concerning the two 1997 robberies that bears no relationship to the specific purposes described above, nor does the Court mean to foreclose Defendant from presenting evidence or argument concerning any dissimilarities among these crimes.  The Government's evidence on this point must focus on the relevant similarities among the three crimes and establish an adequate foundation to support a reasonable inference that these similarities show a common scheme based on prior knowledge, preparation, or planning as a robber of banks and stores.  An adequate foundation necessarily involves introducing

testimony about the relevant features of the bank robbery charged in the *Indictment* before introducing evidence of similar features in Defendant's prior crimes.  Further, Defendant is free to call into question the significance of such similarities by means of cross-examination, closing argument, and presenting his own testimony or that of other defense witnesses.

Subject to these conditions, the Court determines that the probative value of the anticipated evidence regarding the two 1997 robberies for which Defendant pleaded guilty is not substantially outweighed by the danger of unfair prejudice or other considerations listed in Fed. R. Evid. 403.  In addition, the Court will offer to provide a limiting instruction on this issue, with input from counsel, in order to mitigate the potential for unfair prejudice or juror confusion occasioned by the admission of such evidence.

After the Court heard the parties on this issue at the hearing on July 6, 2006, Defendant filed a motion to reconsider the Court's ruling.  [Doc. 68.]  This motion is premature in one sense, because the Court clearly indicated at the hearing on July 6, 2006, that its ruling would take the form of a written order filed at a later date, yet Defendant did not await that written ruling before seeking reconsideration.  [Doc. 65.]  In another sense, Defendant's motion to reconsider is untimely because it was not filed until August 2, 2006, after the motions deadline expired.  In any event, Defendant's motion to reconsider his anticipated version of the Court's ruling does not persuade me that the evidence in question, subject to the limitations provided herein, is inadmissible under Fed. R. Evid. 404(b).

Nevertheless, my written ruling on this issue remains subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.  Thus, counsel

for the Government must advise both the Court and opposing counsel when he is ready to introduce the 404(b) evidence to the jury at trial so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide the jury with a timely limiting instruction.

**B.**      **Admission of Defendant's Prior Convictions Under Fed. R. Evid. 609**

Under Fed. R. Evid. 609(a)(1), evidence that an accused has a felony conviction that is less than ten years old "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Under Fed. R. Evid. 609(b), evidence of a conviction that is more than ten years old (measured from the date of the conviction or the date of release from confinement for that conviction, whichever is later) is not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  In either case, the Court's ruling on the admissibility of the prior convictions must be premised on a balancing of the probative value of the evidence against its prejudicial effect under Fed. R. Evid. 403.  See United States v. Howell, 285 F.3d 1263, 1270 (10th Cir. 2002).

> The Tenth Circuit has articulated several factors which
>
> are relevant to the determination whether the probative value of a prior conviction outweighs its prejudicial effects.   Among them are "the nature of the crime, the time of the conviction, the similarity of the past crime to the charged crime, the importance of the defendant's testimony, and the degree to which the defendant's credibility is central to the case."

United States v. Sides, 944 F.2d 1554, 1560 (10th Cir. 1991) (quoting United States v.

8

Jackson, 627 F.2d 1198, 1209 (D.C.Cir.1980)); see generally 4 Jack B. Weinstein &

Margaret A. Berger, Weinstein's Federal Evidence §§ 609.05[3][a] (2d ed. 2006).

If the Court determines that an accused's prior conviction is admissible under this

standard, then "'[o]rdinarily, it is improper for the prosecution to examine into the details

of the crime for which the accused was convicted. The cross-examination should be

confined to a showing of the essential facts of convictions, the nature of the crimes, and the

punishment.'" Howell, 285 F.3d at 1267 (quoting United States v. Albers, 93 F.3d 1469,

1479-80 (10th Cir.1996), and United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir.1977)).

Further limits on the admission of details about the prior conviction may be imposed so long

as the Court has engaged in the requisite balancing under Fed. R. Evid. 403 "before

determining what information about a witness's prior felony conviction, including its nature,

should be admitted or excluded." Id.

Applying these standards, the Court determines that Defendant's convictions which

are more than ten years old are not admissible under Fed. R. Crim. P. 609(b) because they

do not meet the heightened standard that this rule imposes when considered in relation to the

charges for which Defendant is on trial in this case. These older convictions include:

1.     Defendant's conviction for forgery in state court dated October 22, 1979;

2.     Defendant's conviction for two counts of commercial burglary in state court dated

October 22, 1979;

3.     Defendant's conviction for six counts of armed robbery with a deadly weapon and

two counts of armed robbery with a firearm in state court dated May 7, 1981;

4.      Defendant's conviction for armed bank robbery in federal court dated June 23, 1981;

5.      Defendant's conviction for armed robbery with a deadly weapon in state court dated August 13, 1982; and

6.      Defendant's conviction for robbery in state court dated September 11, 1990.

While the 1979 forgery conviction may bear on Defendant's credibility because it involves dishonesty or false statement, and the older burglary convictions listed above may have some bearing on Defendant's credibility, I find that the age of these crimes limits their probative value and that the cumulative effect of admitting all of them in combination with Defendant's more recent convictions would be unfairly prejudicial and lead to confusion of the issues.  See Jackson, 627 F.2d at 1209; 4 Jack B. Weinstein & Margaret A. Berger, supra, §§ 609.05[3][b], 609.05[3][c].  For these reasons, the probative value of these convictions is not strong enough to substantially outweigh their prejudicial effect to the accused, and they do not meet the standard for admissibility under Fed. R. Evid. 609(b).

The Court reaches a different conclusion with respect to Defendant's more recent conviction for robbery in state court dated May 14, 1998, and his more recent conviction for bank robbery in federal court dated April 27, 1999.  The age of these two convictions does not subject them to the heightened standard for admissibility stated in Fed. R. Evid. 609(b).  Further, these convictions concern the same crimes for which the Court has determined that some evidence is admissible in the Government's case-in-chief under Fed. R. Evid. 404(b).  Admission of the fact that these two crimes resulted in guilty pleas and convictions does not add significantly to the prejudice occasioned by the evidence previously admitted under Fed.

R. Evid. 404(b) in the Government's case-in-chief, and the Court already has determined that such evidence is more probative than prejudicial.

In addition, Defendant's credibility is likely to be a central issue if he testifies at trial inasmuch as his claim of mistaken identity and his alibi evidence would contradict pertinent parts of the prosecution witnesses' testimony.  See United States v. Causey, 9 F.3d 1341, 1344 (7th Cir. 1993).  While robbery or bank robbery generally are not considered to be crimes involving dishonesty or false statement, the two robberies at issue here nevertheless involved conduct involving a degree of stealth, planning, and disregard for the rights of others that has impeachment value under the particular circumstances of this case.  See United States v. Estrada, 430 F.3d 606, 616-19 (2d Cir. 2005) (explaining why certain crimes may be highly probative for impeachment purposes under Fed. R. Evid. 609(a)(1) even though they do not meet Fed. R. Evid. 609(a)(2)'s narrower definition of crimes involving dishonesty or false statement); United States v. Lipscomb, 702 F.2d 1049, 1070-71 & n.78 (D.C. Cir. 1983) (concluding that a district court did not abuse its discretion in admitting evidence of a prior robbery conviction under Fed. R. Evid. 609(a)(1)).

The Tenth Circuit has stated that:  "It is improbable that one who undertakes to rob a bank with a gun will prove to be a person of high character who is devoted to truth." United States v. Halbert, 668 F.2d 489, 495 (10th Cir. 1982).  Where a defendant undertakes to rob a bank or store through stealth or deception by relying on the threat to use a gun or other deadly weapon without actually brandishing it, there is even more reason to question his credibility.  These factors all weigh in favor of the admission of the two most recent

11

convictions noted above.

The Court acknowledges that, as a general matter, the similarity between the crime for which a defendant was previously convicted and the crime for which he is presently charged is a factor that weighs against the admission of such a prior conviction under Fed. R. Evid. 609.  See United States v. Wallace, 848 F.2d 1464, 1473 (9th Cir. 1988); 4 Jack B. Weinstein & Margaret A. Berger, supra, § 609.05[3][d].  Evidence of such similar crimes may be admitted under this rule, however, when their probative value outweighs their prejudicial effect.  See Causey, 9 F.3d at 1344.

In this case, the Court determines that, for purposes of impeachment under Fed. R. Evid. 609, the probative value of Defendant's robbery conviction in 1998 and bank robbery conviction in 1999 outweigh their prejudicial effect because Defendant's credibility will be a central issue for the jury if he testifies, and because these prior convictions are less than ten years old and have some bearing on the anticipated evidence regarding the identification of the bank robber and Defendant's alibi.  Further, as in the case of evidence admitted under Fed. R. Evid. 404(b), the prejudicial effect of these two prior robbery convictions can be mitigated by offering a limiting instruction and restricting the details about these convictions which can be presented to the jury.  See Zamora, 222 F.3d at 762 (discussing criteria for admissibility under Fed. R. Evid. 404(b)); Howell, 285 F.3d at 1267 (discussing limits on details of prior conviction admitted under Fed. R. Evid. 609).

For these reasons, the Court determines that Defendant's conviction for robbery in 1998 and his conviction for bank robbery in 1999 are conditionally admissible for the

purpose of impeaching Defendant's credibility under Fed. R. Evid. 609 in the event that he testifies at trial.  In order to mitigate the potential for unfair prejudice noted above, the Court will limit the Government's inquiry to those aspects of the prior crimes which are admissible under Fed. R. Evid. 404(b), and the essential facts about the convictions arising from these crimes (such as the dates and names of the crimes and the punishment). See Howell, 285 F.3d at 1267.  Further, the Court will offer to provide the jury with a limiting instruction with input from counsel if this evidence is introduced at trial.  See United States v. Moore, 917 F.2d 215, 235 (6th Cir. 1990) (concluding that a limiting instruction "provided an adequate safeguard against any potential prejudice possibly engendered by the admission of the prior conviction" for armed robbery).

As with the Rule 404(b) evidence, Defendant filed a motion to reconsider the Court's anticipated ruling on the Rule 609 evidence pertaining to his prior convictions as well. [Doc. 68.]  For the reasons previously articulated, this motion is untimely and does not persuade me to change my written ruling.

Nevertheless, my ruling on the Rule 609 evidence also is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.  Thus, counsel for the Government must advise both the Court and opposing counsel if and when he is ready to introduce the prior convictions to the jury during Defendant's testimony so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide a timely limiting instruction.

**C.**      **Admission of Alibi Witnesses' Prior Convictions Under Fed. R. Evid. 609**

Defendant also seeks to preclude the Government from introducing some or all of the prior convictions of two of Defendant's alibi witnesses:  Delbert Tenorio and Connie Tenorio.  The standard for impeaching witnesses with prior convictions under Fed. R. Evid. 609 differs slightly from the analysis provided above when the witnesses to be impeached are not defendants in the case in which they are called to testify.   Where the witness to be impeached is not a defendant and the prior conviction involved a crime punishable by death or imprisonment in excess of one year, the prior conviction is admissible subject only to the balancing test of Fed. R. Evid. 403 and the limitations applicable to convictions that are more than ten years old.  See Fed. R. Evid. 609(a)(1).  Prior convictions involving dishonesty or false statement also may be admissible even when the crime at issue is not punishable by death or imprisonment in excess of one year.  See Fed. R. Evid. 609(a)(2).

Applying this rule, Delbert Tenorio's prior conviction for forgery in 1999 is admissible for impeachment purposes if he testifies because it involves dishonesty or false statement, it is less than ten years old, and its probative value is not substantially outweighed by the danger of unfair prejudice or other factors listed in Fed. R. Evid. 403.  See United States v. Byrd, 771 F.2d 215, 219 (7th Cir. 1985) (concluding that forgery is a crime involving dishonesty or false statement under Fed. R. Evid. 609(a)(2)).  The record indicates that Delbert Tenorio also has two other prior felony convictions that are less than ten years old and that qualify for admission under Fed. R. Evid. 609 even if they do not involve dishonesty or false statement.

These convictions are for receiving or transferring a stolen motor vehicle in 1999 and possession of an imitation controlled substance with intent to distribute in 2005. With the limitation that the Government's evidence concerning these prior convictions can only include basic information such as their dates, the names of the crimes, and the punishment imposed, I find that the probative value of these two prior convictions also is not outweighed by the danger of unfair prejudice or other factors listed in Fed. R. Evid. 403.

Other courts have concluded that the crime of receiving stolen property has enough bearing on a witness's veracity to be admitted under Fed. R. Evid. 609(a)(1) See, e.g., U.S. Xpress v. J.B. Hunt Transp., 320 F.3d 809, 816 (8th Cir. 2003); United States v. Field, 625 F.2d 862, 872 (9th Cir.1980) (same). And a witness's conviction for the crime of possessing an imitation controlled substance with the intent to distribute it involves a significant degree of false pretense, planning, and deception insofar as it is premised on a "bait and switch" scheme where the witness promises to deliver real drugs and then delivers an imitation. Cf. United States v. Hayes, 553 F.2d 824, 827-28 (2d Cir. 1977) (noting that the crime of importing cocaine "ranks relatively high on the scale of veracity-related crimes" and could fall under Fed. R. Evid. 609(a)(2) if "the importation involved false written or oral statements"). Thus, I conclude that Mr. Tenorio's prior convictions for these offenses are admissible under Fed. R. Evid. 609(a)(1).

The Government concedes that, with the exception of the three convictions discussed above, none of Delbert Tenorio's other prior convictions (most of which are more than ten years old) qualify for admission under Fed. R. Evid. 609. Thus, evidence of these prior

convictions will not be admitted at trial.

Defendant's other alibi witness, Connie Tenorio, has a prior conviction for a felony auto burglary charge dating from 1997 which the Government seeks to introduce under Fed. R. Evid. 609 in the event that she testifies at trial. The Government does not seek to introduce Ms. Tenorio's 2001 misdemeanor conviction for attempted receipt of a stolen vehicle.

I conclude that Ms. Tenorio's auto burglary conviction dating from 1997 meets the criteria for admission under Fed. R. Crim. P. 609(a)(1) because it is a felony conviction that is less than ten years old, and its probative value in impeaching her credibility is not substantially outweighed by the danger of unfair prejudice or other factors listed in Fed. R. Crim. P. 403. While it is true that auto burglary is not considered a crime involving dishonesty or false statement under Fed. R. Crim. P. 609(a)(2), under the circumstances presented here I find that it nevertheless has some bearing on her credibility because it involves a significant degree of stealth, planning, and disregard for the rights of others. See Lipscomb, 702 F.2d at 1057 ("[M]ore likely, Congress anticipated that crimes of stealth (e.g., smuggling, burglary), while not quite crimes of 'dishonesty or false statement,' do reflect lack of credibility and should be admitted unless significantly prejudicial."). Accordingly, Ms. Tenorio's 1997 auto burglary conviction is admissible under Fed. R. Evid. 609(a)(1).

With respect to the prior convictions of Delbert Tenorio and Connie Tenorio that I have determined to be admissible for impeachment purposes, the same conditions expressed above apply with respect to limiting instructions, advising the Court and opposing counsel

16

before the evidence is introduced to the jury, and reconsideration of the issue if unforeseen circumstances or contextual changes occur during the trial.

### D.   Admission of Probation Officer's Identification Testimony

Defendant also seeks to preclude the Government from introducing testimony by Dara Ferguson, Defendant's state probation officer, identifying Defendant as the person shown in a bank surveillance photograph taken during the alleged robbery on or about April 25, 2005.  Defendant contends that such evidence would not be helpful to the jury under Fed. R. Evid. 701 and would be unfairly prejudicial under Fed. R. Evid. 403 because it would reveal that Defendant was under the supervision of a probation officer at the time of the crime charged in the *Indictment*.

I begin my analysis of these contentions by considering the probative value of Ms. Ferguson's testimony identifying Defendant in the surveillance photograph taken during the robbery based on her familiarity with his appearance at that time.  Rule 701 permits a lay witness to offer opinion testimony only when it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "When addressing the admissibility of lay identification testimony, courts have been liberal in determining the extent of perception required to satisfy the first requirement of Rule 701.  Courts have likewise preferred to leave to juries any assessment of the weight to be given to such testimony when there exist questions regarding the quantity or quality of perception."  United

States v. Bush, 405 F.3d 909, 916 (10th Cir. 2005).

Thus, the first requirement of Rule 701 is not at issue here so long as Ms. Ferguson had some opportunity to view Defendant in person around the time of the crime charged in the *Indictment* and before her trial testimony occurs.  Inasmuch as there is no contention that Ms. Ferguson is going to testify that she has scientific, technical, or other specialized knowledge in the interpretation of bank surveillance photographs, the third requirement of Rule 701 also is not at issue here.

The only remaining requirement of Rule 701 is whether the identification testimony will be helpful to the jury.  With regard to this requirement, the Tenth Circuit has acknowledged that when the witness providing such testimony has never seen a defendant in person before the trial and is simply comparing a photograph to the defendant's appearance at trial, the identification testimony is not helpful to the jury because, in that circumstance, "the jury is in as good a position to make the identification as the lay witness." Bush, 405 F.3d at 917 (citing United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir.1993)). In this case, I agree with Defendant that it would not be helpful for Ms. Ferguson to testify merely for the purpose of making a comparison between the bank surveillance photographs and the way Defendant appears at trial.  The jury can do that on their own.

The relevant issues for the jury to determine, however, include not just the way Defendant appears at trial but also the way he appeared around the time of the robbery. Unlike the jurors, Ms. Ferguson has a previous acquaintance with Defendant's appearance that dates from the period during which the crime charged in the *Indictment* was committed.

Ms. Ferguson's prior acquaintance with Defendant's appearance during this period is highly probative because Defendant's claim of mistaken identity is likely to be a central issue at trial, and in order to properly evaluate this claim the jury is entitled to take into account whether and to what extent there are any differences between Defendant's appearance at the time of trial and his appearance at the time the bank surveillance photograph was taken. See United States v. Ingram, 600 F.2d 260, 261 (10th Cir. 1979). The proposed testimony of Ms. Ferguson provides a helpful means of taking such differences into account.

The Government also contends that Ms. Ferguson's testimony provides necessary background and context for the testimony of other witnesses because Ms. Ferguson's identification of Defendant in the bank surveillance photographs based on her prior acquaintance with him is what led law enforcement officers to investigate Defendant as a suspect and include him in the photo lineup shown to the victim teller. I agree that such testimony also is probative and helpful to the jury.

Nevertheless, I must balance the probative value of this evidence against the potential for unfair prejudice occasioned by Ms. Ferguson's status as Defendant's state probation officer. This status raises the potential for unfair prejudice in two respects. First, if counsel for the Government elicits testimony that Ms. Ferguson's acquaintance with Defendant arises from her role as his probation officer, then the jury may reasonably infer from this testimony that Defendant was on probation at that time because he has a prior criminal record. Under the circumstances of this case, however, I find that the potential for such a disclosure does not carry much weight in the balancing test under Fed. R. Evid. 403 because the Government

does not intend to elicit testimony that Ms. Ferguson's familiarity with Defendant arose from her role as his probation officer, and because the portion of Defendant's criminal record which caused him to be on probation supervised by Ms. Ferguson (namely, the 1998 robbery conviction) already is subject to disclosure under Fed. R. Evid. 404(b) and 609(a).  See United States v. Griffin, 389 F.3d 1100, 1104 (10th Cir. 2004).

The second avenue for unfair prejudice arises from the tactical choice that Defendant will face upon cross examining Ms. Ferguson.  Even if the Government does not elicit testimony that Ms. Ferguson is Defendant's probation officer on direct examination, Defendant may wish to elicit such testimony on cross examination in order to establish a basis for arguing that Ms. Ferguson's testimony is biased in favor of the Government.  As noted above, such testimony may cut both ways because, in addition to showing a potential basis for discrediting Ms. Ferguson's testimony because of her relation to the Government, it would also disclose the aspect of Defendant's criminal history that caused him to be placed on probation.

Under the particular circumstances of this case, where the prior conviction that led to the assignment of Ms. Ferguson as Defendant's probation officer already is subject to being introduced at trial by other means under Fed. R. Evid. 404(b) and 609, I find that the potential prejudice or limitation on Defendant's right to confront adverse witnesses occasioned by the tactical choice he will face during cross examination of Ms. Ferguson is slight in comparison to the probative value of her identification testimony.  Thus, I conclude that the Government may call Ms. Ferguson to testify regarding the following subjects:  (1)

her role in identifying Defendant as a suspect in the bank robbery charged in the *Indictment*, (2) her comparison between the bank surveillance photographs and the way Defendant appeared when she saw him near the time of that robbery; and (3) her comparison between the way Defendant appeared when she saw him near the time of the robbery and the way Defendant appears to her at trial.

To minimize the prejudicial effect of such testimony, however, I will offer to place the following conditions on Ms. Ferguson's testimony.  First, the Government may not refer to or elicit testimony regarding Ms. Ferguson's status as Defendant's probation officer during direct examination.  If Defendant intends to elicit such testimony during cross examination, then the Court will offer two additional conditions:  (1) the Government may not call Ms. Ferguson to testify unless and until it is successfully introduces the Rule 404(b) evidence discussed in previous sections of this *Memorandum Opinion and Order*, and (2)  the Court will offer a limiting instruction to advise the jury that Ms. Ferguson's role as Defendant's probation officer arose from one of the prior crimes that was previously disclosed to the jury, not as a result of any other crime, and that any evidence of that prior crime may only be considered for the limited purposes previously mentioned, *i.e.*, those stated in the limiting instruction regarding the Rule 404(b) evidence.  With these conditions in place, I conclude that Ms. Ferguson's proposed identification testimony is admissible under Fed. R. Evid. 701 and 403 and does not violate the Confrontation Clause.

### E.    Discovery of Alibi Witness Connie Tenorio's Diary Entries

In addition to the defense motions discussed above, the Government has moved to

compel discovery of the entire diary kept by Connie Tenorio that some of Defendant's alibi witnesses mentioned in prior interviews as the source of their recollection that they were with Defendant at the time of the robbery charged in the *Indictment*.  In response to this motion, Defendant advises the Court that he does not intend to introduce the diary itself at trial and thus its only use is to refresh the alibi witnesses' recollection.

Under this posture, it appears that the relevant rules governing the production of the diary are Fed. R. Evid. 612 and Fed. R. Crim. P. 26.2.  Fed. R. Evid. 612 provides, in relevant part, that:

> if a witness uses a writing to refresh memory for the purpose of testifying, either–
>   (1) while testifying, or
>   (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.  If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.

Id.  In this instance, it appears that some of Defendant's alibi witnesses already have used at least one entry from Connie Tenorio's diary to refresh their memory for the purpose of testifying, but Defendant is claiming that the entire diary need not be produced because much of it contains matters not related to the anticipated testimony of the alibi witnesses.  Under these circumstances, Fed. R. Crim. P. 612 calls for the Court to conduct an *in camera* review of the diary so that any unrelated entries can be excised from what is produced to the Government.

Fed. R. Crim. P. 26.2 similarly provides, in relevant part, that:

(a) Motion to Produce.  After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

(b) Producing the Entire Statement.  If the entire statement relates to the subject matter of the witness's testimony, the court must order that the statement be delivered to the moving party.

(c) Producing a Redacted Statement.  If the party who called the witness claims that the statement contains information that is privileged or does not relate to the subject matter of the witness's testimony, the court must inspect the statement in camera.  After excising any privileged or unrelated portions, the court must order delivery of the redacted statement to the moving party.  If the defendant objects to an excision, the court must preserve the entire statement with the excised portion indicated, under seal, as part of the record.

(d) Recess to Examine a Statement.  The court may recess the proceedings to allow time for a party to examine the statement and prepare for its use.

(e) Sanction for Failure to Produce or Deliver a Statement.  If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record.

Id.  This rule parallels the requirements of the Jencks Act, but unlike that statute, it also applies to statements by defense witnesses.  See 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, supra § 612.08[3].

Under the circumstances of this case, Fed. R. Crim. P. 26.2 also calls for the Court to conduct an in camera review of the diary entries in order to determine which portions relate to the witnesses' testimony.  While Fed. R. Evid. 612 and Fed. R. Crim. P. 26.2 contemplate disclosure of witness statements when the witness actually testifies at trial, it will facilitate a more efficient use of the jury's time and assist the parties' trial preparation

if Ms. Tenorio's diary is made available for the Court's *in camera* review in advance of the trial.

It was for this reason that the Court asked Defendant's counsel to provide a copy of the diary to the Court, *ex parte* and under seal, at the hearing on July 6, 2006.  The Court will defer further ruling on the Government's discovery motion until the *ex parte* in camera review of the diary entries is completed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court defers ruling on the *Government's Motion to Compel Discovery* [Doc. 41] pending completion of an *in camera* review of the diary entries which are the subject of that motion.  As to Defendant's motions in limine, the Court issues the following conditional rulings:  (1) *Defendant's Motion in Limine:  Fed. R. Evid. 609* [Doc. 43] is denied in part with respect to the two convictions stemming from the 1997 robberies and granted in part with respect to Defendant's other prior convictions; (2) *Defendant's Motion in Limine:  Fed. R. Evid. 404(b)* [Doc. 44] is denied in part with respect to the two 1997 robberies to which he pleaded guilty and granted in part with respect to evidence of Defendant's other prior crimes; (3) *Defendant's Motion in Limine:  Fed. R. Evid. 701* [Doc. 46] is denied subject to the conditions stated above; (4) *Defendant's Motion in Limine:  Fed. R. Evid. 609 (Delbert Tenorio)* [Doc. 47] is denied in part with respect to Mr. Tenorio's 199 forgery conviction, his conviction for receiving or transferring a stolen motor vehicle in 1999, and his conviction for possession of an imitation controlled substance with intent to distribute in 2005, and granted in part with respect to Mr. Tenorio's other prior

convictions; and (5) *Defendant's Motion in Limine: Fed. R. Evid. 609 (Connie Tenorio)* [Doc. 48] is denied in part with respect to Ms. Tenorio's 1997 felony auto burglary conviction and granted in part with respect to her other prior conviction(s).

**IT IS, THEREFORE, ORDERED** that the Court will conduct an *in camera* review of the diary entries which are the subject of the *Government's Motion to Compel Discovery* [Doc. 41], and the Court defers ruling on that motion pending completion of such *in camera* review.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine: Fed. R. Evid. 609* [Doc. 43] is **GRANTED IN PART** and **DENIED IN PART** under the conditions stated above.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine: Fed. R. Evid. 404(b)* [Doc. 44] is **GRANTED IN PART** and **DENIED IN PART** under the conditions stated above.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine: Fed. R. Evid. 701* [Doc. 46] is **DENIED** subject to the conditions stated above.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine: Fed. R. Evid. 609 (Delbert Tenorio)* [Doc. 47] is **GRANTED IN PART** and **DENIED IN PART** under the conditions stated above.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine: Fed. R. Evid. 609 (Connie Tenorio)* [Doc. 48] is **GRANTED IN PART** and **DENIED IN PART** under the conditions stated above.

**IT IS FURTHER ORDERED** that *Defendant's Motion for the Court's Reconsideration of its Ruling Admitting Fed. R. Evid. 404(b) and 609 Evidence Against Him* [Doc. 68] is **DENIED** subject to the conditions stated above.

**SO ORDERED** this 3rd day of August, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE